**Barket, Marion, Epstein & Kearon, LLP**
Attorneys at Law

666 Old Country Road, Suite 700
Garden City, New York 11530
[P] 516.745.1500 • [F] 516.745.1245

5 Columbus Circle, Suite 710
New York, New York 10019
[P] 212.972.1710 •
[Send mail to Garden City]

www.barketmarion.com

May 17, 2017

**via ELECTRONIC FILING**
Honorable Joanna Seybert
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    Loeb v. County of Suffolk, et al.
                  Case No. 15-CV-578

Judge Seybert:

      This firm represents the Plaintiff, Christopher Loeb. We are writing to oppose Defendant Leto's pending stay-application, a motion joined by no other defendants in this case but seeking a global freeze pending "the completion of the [federal] criminal investigation of these events." For the reasons set forth below, Mr. Leto's application should be denied.

## Background

      On December 14, 2012, police entered Mr. Loeb's home and recovered a duffel bag containing a gun belt and pornography that had been stolen from the car of James Burke—then the Suffolk County Chief of Police. During this "search," police tampered with physical evidence, rearranged the evidence at the scene for crime scene photographs, and allowed Chief Burke to remove evidence from the scene before it was inventoried. Meanwhile, Mr. Loeb was kept at the precinct for the next forty-eight hours without being arraigned. During this time, Chief Burke and other members of the Suffolk County Police repeatedly punched Mr. Loeb in the head and ribs, choked him until he lost consciousness, ignored his requests for counsel, sought to extract confessions by threatening to kill him and to arrest and rape his mother, and entered false information into official police logs to conceal their misconduct.

Faced with criminal charges, Mr. Loeb moved to suppress the physical evidence and his statements as a result of the constitutional violations perpetrated by the Suffolk County Police. In response, half-a-dozen police and probation officers lied under oath at the suppression hearing. Mr. Loeb's suppression motion was thus denied, Mr. Loeb pled guilty to charges that he stole and possessed Chief Burke's gun belt and ammunition, and he spent the next three years in prison.

While Mr. Loeb languished behind bars, the United States Attorney's Office launched an investigation into the conduct of Chief Burke and his associates. In the process, the investigation unearthed proof of massive police corruption related to Mr. Loeb's arrest and prosecution. And as a result, three developments emerged: Chief Burke was indicted—and pled guilty—to charges that he violated Mr. Loeb's civil rights and engaged in a conspiracy to obstruct justice; other members of Suffolk law enforcement were indicted; and Mr. Loeb was released from prison with his criminal conviction vacated.

## Argument

Four-and-a-half years into Mr. Loeb's pursuit of justice, and more than two years into the present case, Defendant Leto seeks to stay the present case pending the completion of the federal criminal investigation. Yet the consequence of that stay would be a freeze the length of which Leto does not venture to estimate, based upon a set of legal factors he does not attempt to apply,[1] for relief that even the Defendant County is not seeking. This application should be denied.

First, Leto says that his application is made on the consent of federal prosecutors, but he does not indicate joinder from any actual co-defendants. This raises an immediate procedural problem, because "[t]he general rule is that parties do not have standing to move on behalf of other defendants." *Amtrust North America, Inc. v. Safebuilt Ins. Servs., Inc.*, 2015 WL 7769688, at *3 (S.D.N.Y. 2015). *See also Philip Morris Inc. v. Heinrich*, 1997 WL 781907, at *12 (S.D.N.Y. 1997) (granting stay only as to moving defendant, allowing case to proceed against others); *Commercial Laundry v. Linen Supply Ass'n of Greater N.Y.*, 90 F. Supp. 470 (S.D.N.Y. 1950) ("What I do decide is that the other defendants may not stay proceedings on the plea of prejudice to Stein"). Clearly, that is what Leto is trying to do here—moving alone, but globally seeking a stay of "this matter" and "this action" (*see* Def. Motion, at 1-2), and never seeking severance from any of his non-moving co-defendants.

This contravention has special importance here. Consider the truly different circumstances dividing Defendant Leto from, say, Defendant Burke. Through counsel, Leto describes himself as someone who in future prosecutions is "likely to be a witness." *See* Def. Motion, at 1. Meanwhile, Defendant Burke has already been indicted, convicted, and sentenced. *Id.* So the movant argues that a stay is appropriate to "protect Leto's rights," but for Burke—the

---

[1] See Def. Motion, at 2 (final paragraph before Conclusion, setting forth the factors "courts often consider" but never applying them).

lead individual defendant—there is not even a plausible "right" left for a stay to protect. So by ignoring these differences, Leto's application would give this case a Hobson's Choice: given that "Plaintiff is entitled to proceed with ... discovery ... against each of those [other] defendants," who in turn the movant would have a right to re-depose "upon the vacatur of the stay," the Court could either "grant [his] request [and] impose upon plaintiff and the other parties duplicative and unnecessary effort"; or, alternatively, force the parties "to withhold taking the depositions of those defendants until the vacatur of a stay, an alternative which would be prejudicial to plaintiff's right to proceed expeditiously against all defendants." *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) (denying stay).

Second, the movant's application is belied by the very same factors he asks the Court to consider. "In making determinations about stays," he says, "courts often consider ... 1) the ... criminal case overlap with ... the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiff[] in proceeding expeditiously [versus] the prejudice ... caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." *See* Def. Motion, at 2. Mr. Loeb agrees that the Court should consider these factors. Every single one of them leans against the issuance of a stay.

*On "overlap"*: on information and belief, the primary theory of defense is that the criminal issues do not overlap with the civil ones. This is by necessity. Otherwise, the defense of every convicted defendant, like Burke, would be barred by collateral estoppel. *See, e.g., Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986) ("[t]he criminal defendant is barred from relitigating any issue determined adversely to him in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue").

That is why Leto's motion never actually applies this factor: because he knows that if he is ever charged criminally, then civilly he will be claiming a *lack* of "overlap" with a megaphone. To that end, taking one position now just to take the opposite one later would run afoul of the doctrine of judicial estoppel. The very purpose of that doctrine, after all, is to "prevent[] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *See, e.g., Sewell v. 1199 Nat. Ben Fund for HHS*, 187 Fed. Appx. 36, 40 (2d Cir. 2006). So Leto's refusal to take a position on this overlap here is wise. But it also shows the hollowness of his motion.

*On case "status"*: on information and belief, there is no public filing indicating that Leto has been indicted. In his motion, he says he expects to be a "witness" in further prosecutions. *See* Def. Motion at 1. But if he himself were going to be indicted then he would not know in advance, because "[g]rand jury proceedings are presumptively secret[.]" *United States v. Schlegel*, 2017 WL 1373269 *3 (2d Cir. 2017). Given that he could be indicted at any time until the expiration of the statute of limitations, he would not necessarily know with certainty what his case "status" even is until potentially December 2018—five years from when he gave false

3

testimony and obstructed justice.  *See* 18 U.S.C. § 3282(a); *Morales v. United States*. 961 F. Supp. 633, 638 (S.D.N.Y. 1997) (noting the five year limitation-period for obstruction of justice).

However, assume for the moment that Leto is right—and that all he will ever be in the criminal case is a "witness."  If that were true, it would render him even less worthy of a stay.  After all, the purpose of staying civil proceedings pending criminal ones is to save civil litigants from the classic dilemma between civil law's silence-penalties—i.e. adverse inferences—versus criminal law's right-to-remain-silent.  *See, e.g., United States v. Certain Real Property and Premises Known as 4003-4005 5th Avenue*, 55 F.3d 78 (2d Cir. 1995) (recognizing the "dilemma: remain silent and allow the [civil liability] or testify against the [civil claim] and expose himself to incriminating admissions").  Here, if Leto agreed to be a government-witness, then he himself would be waiving his silence-right and thus no "dilemma" would unfold.  After all, if the government trusted him for testimony it would expect the same thing that Mr. Loeb would expect here:  the truth.  Being a "witness" rather than a criminal defendant, then, would not call for a stay; it would almost single-handedly render a stay inappropriate.

Together, these forces explain Leto's behavior here—namely, citing this "status" factor without attempting to apply it.  But this element weighs strongly against a stay.  His status is eminently uncertain: with an investigation of this scope, indictments could continue all the way up until the limitations-period expires; even then, for each affected defendant, that would mean the prosecution's start—not its end; and in turn, any such prosecution would cause years of additional potential delay while prosecutions traveled from indictment to verdict.  Leto offers no defense of the uncertainty occasioned by this "status."  And worse, his only discussion of the topic—that he expects to be a "witness"—further buries his application underground.

***On the "interests" of the Plaintiff, Defendant, Court, and Public***:  it is worth beginning with the legal baseline that appears nowhere in Defendant Leto's motion—that "a stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (internal references omitted) (denying stay).

Stays are sometimes deemed appropriate, of course, but "the Constitution rarely, if ever, requires such a stay."  *Id*.  This makes sense for litigants, to whom an "ancient tenet of the law has been capsulized in the expression 'justice delayed is justice denied;'"[2] and it makes sense for courts, who possess the "well-recognized interest in disposing of the causes on its docket with economy of time and effort for itself."  *Louis Vuitton Malletier*, 676 F.3d at 104.

These principles have special application here.  The case is clearly one of public concern—involving corruption at the highest levels of local law enforcement.  Typing the

---

[2] *Strachan v. Colon*, 941 F.2d 128, 129 (2d Cir. 1991).

4

Plaintiff's—or even Mr. Leto's—name into a Google search engine yields several results from articles in the press.[3] Yet the public's appetite for information about this matter is even more quenchable in this case than in a criminal one, because civil discovery is inherently more expansive than criminal discovery. That is notable, because even for criminal cases, the law recognizes the obvious: that "the public is the loser when a ... trial is not prosecuted expeditiously...." *United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016). In this case, then, the cost of not moving forward expeditiously is only more pronounced.

The stakes are even higher for Mr. Loeb in particular, because he is not a man of tremendous means, he has been publicly dealing with the aftermath of these rights-violations for nearly half a decade, this very case has been pending for more than two years, and a stay has already been granted in this case before—and lifted. He deserves to have his day in Court without further delay; the fact that "defendant[s]'[] conduct also resulted in a criminal charge against [them] should not be availed ... as a shield against a civil suit and prevent plaintiff from expeditiously advancing [his] claim." *Paine, Webber, Jackson & Curtis Inc.*, 486 F. Supp. at 1119. Against the unelaborated interest in "protect[ing] Leto's rights" (*see* Def. Motion, at 1), the interests of the Court, society, and this Plaintiff all lean in favor of moving this case forward.

For these reasons, Mr. Loeb respectfully requests that the pending stay-application be denied.

Respectfully submitted,

BARKET MARION EPSTEIN & KEARON, LLP


    /s/ Bruce Barket
Bruce Barket, Esq.
Amy Marion, Esq.
Alexander Klein, Esq.

---

[3] Typing "Anthony Leto" into a search, for example, yields a Newday article—second from top—titled, "2 more cops tied to Burke case retire from Suffolk force." Below that, an article from pix11 titled "'Have you ever been choked out before? Shocking torture accusations...."